**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BMO HARRIS BANK NATIONAL ASSOCIATION,**

    **Plaintiff/Counter Defendant,**

-vs-                                         Case No. 6:11-cv-363-Orl-31GJK

**MUSKOGEE INDUSTRIAL PARK, LLC; MARCOS MARCHENA; CARLOS A. RIVERO; KEITH A. GRAHAM; and JOSE A. REY,**

    **Defendants/Counter Claimants.**

---

# ORDER

This cause comes before the Court without oral argument on a Motion to Dismiss Counts I and III of the Amended Counterclaim (Doc. 33) filed by Plaintiff BMO Harris Bank National Association ("BMO"); and the Response (Doc. 39) filed by Defendants' Muskogee Industrial Park, LLC, et al. ("Muskogee").

**I. Overview**

Plaintiff filed the underlying action on March 9, 2011, alleging, *inter alia*, breach of contract and breach of personal guarantees under Florida law. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. On April 25, 2011 Defendants' filed a counterclaim alleging breach of contract in Count I and tortious interference with a contract in Count II. (Doc. 15). The Court dismissed Count I of the counterclaim without prejudice and granted Defendants leave to amend the counterclaim to specifically indicate which section of the Loan Agreement had been breached. (Doc. 27). On August

8, 2011, Defendants filed their Amended Counterclaim alleging breach of contract, tortious interference with a contract, and negligence. (Doc. 32). In an apparent attempt to heed the Court's warning, Defendants now assert more than seven different theories of liability in Count I when read in conjunction with the sixty-seven paragraphs of general allegations. Plaintiffs filed the Motion to Dismiss Counts I and III of the Amended Counterclaim (Doc. 33) on August 22, 2011.

**II. Background**

The following facts are alleged in the Amended Counterclaim and are taken as true for the purposes of ruling on the Motion to Dismiss. In late 2007, Muskogee entered into an agreement with BMO[1] to fund the construction of an industrial office park in Orange County, Florida. The agreement encompassed several loans from BMO, secured by two promisory notes and a mortgage on the property executed by Muskogee, and by personal guarantees signed by the other Defendants in this action. In addition, the parties executed two Loan Agreements[2] which governed their obligations. Under those Agreements, Muskogee was required to submit written requests for disbursement of the Loans, which would then be reviewed and disbursed by BMO periodically until the maturity date of

---

[1] BMO is the successor by merger to the original lender in the case, M&I Marshall and Ilsley Bank.

[2] The agreement at issue here is the Construction Loan Agreement.

the Loans.[3] Thereafter, the parties modified the agreement several times between April 2009 and November 2010; only a few are at issue in the instant Motion:

1. On December 22, 2009, the parties executed a modification of the Loans which changed the maturity date to March 3, 2010.

2. At a meeting on April 22, 2010, BMO represented to Muskogee that Loans would be extended again for up to six months.

3. On June 29, 2010, the parties executed a modification of the Loans which extended the maturity date to September 1, 2010, and limited the extent of funding to only two of the original eight buildings in the office park.[4]

4. On September 3, 2010, the parties executed a modification that extended the maturity date to November 1, 2010.

5. At a meeting on October 19, 2010, Muskogee requested another Loan extension and informed BMO that although construction would be completed by November 1, 2010, the required permits would not be issued. BMO then verbally directed Muskogee and

---

[3] Article 4 Exhibit B of the Loan Agreement governs BMO's obligations to fund the project. It states, in relevant part,

> The balance of the Loan proceeds remaining to be disbursed . . . shall be disbursed during the progress of the construction of the Improvements in one or more construction draws . . . only on the terms hereinafter provided. The Construction Disbursements shall be made on the bases of written requests therefore submitted by Borrower to Lender . . . . (Doc. 14, Ex. 2).

[4] The original plan was for Muskogee to construct, and BMO to fund, eight buildings. The June 29th modification reduced the number of buildings to two and specifically provided that Muskogee shall not be entitled to request Loan disbursements for any other construction on the property.

       the their contractor, Café Homes, to stop construction on the property while it considered Muskogee's request.

6. On November 5, 2010, BMO sent written notice to Muskogee that it would no longer fund the construction project.

Muskogee's claims in Count I are based primarily on two meetings between BMO and Muskogee. (1) Muskogee alleges that it reasonably relied, and was thereby injured by BMO's representations about a Loan extension at the April 22nd meeting; and (2) it alleges that BMO's stop work order on October 19th was a breach of the loan agreement. In Count III Muskogee argues in the alternative that BMO was negligent in breaching its duty to "use reasonable care to avoid devaluing the collateral, by giving [Muskogee] false and misleading information about future extensions and by directing Café Homes and Muskogee to stop work on October 19, 2010." (Doc. 32 at 16).

## III. Standard of Review

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411,421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a

short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950-1951 (2009).

## IV. Discussion

In its order dated June 16, 2011, (Doc. 27), the Court warned Defendants "that any amendments must be well-grounded in fact and warranted by existing law, otherwise Defendants may be subject to sanctions pursuant to FED. R. CIV. P. 11." (Doc. 27). The Court admonished Muskogee because it recognized that BMO's request to stop work "is not inconsistent with any obligation undertaken by [BMO] in the Loan Agreement." *Id*. In the Amended Counterclaim, Muskogee attempts to remedy the deficiency with sixty-seven paragraphs of general allegations followed by three counts. Count I alleges breach of the loan documents based (either directly or by reference to the general allegations) on at least seven different theories of liability, including breach of Article 4 of the Loan agreement, breach of the duty of good faith, impairment of collateral, anticipatory repudiation, breach of the duty of cooperation, "taking control," and "hindering and obstructing."

### A. Count I - Breach of Contract

There are several additions to Count I that appear to address the Court's concern, each will be discussed in turn. First, Muskogee cites Article 4, Exhibit B of the Construction Loan Agreement which states that BMO "shall" fund disbursements. *See supra*, note 2. The problem for Muskogee is that the Court considered, and rejected, the application of this provision in its previous order. (*See* Doc. 27 at 4) (stating "[BMO's] obligation was to fund the construction as set in Article 4 and Exhibit B. There is no allegation that [BMO] failed to honor its funding requirement"). Muskogee now alleges, *inter alia*, that BMO's request to stop work was an anticipatory repudiation of its duty to fund construction disbursements. That allegation is merely a new legal conclusion drawn from the same facts the Court previously addressed. BMO's only obligation was to provide funding pursuant to a valid written funding request. Muskogee never alleges that it made such a request, only that it was prevented from doing so because of BMO's direction to stop construction. As Muskogee recognizes in its Response (Doc. 39), to establish an anticipatory breach under Florida law, a party must show that there is "absolute repudiation by one of the parties prior to the time when his performance is due under the terms of the contract. Such a repudiation may be evidenced by words or voluntary acts, but the refusal must be *distinct, unequivocal, and absolute.*" *Gaylis v. Caminis*, 445 So.2d 1063, 1064 (Fla. 3d DCA 1984) (emphasis added). Here Muskogee only alleges that BMO's stop work request "obstructed" its attempt to perform. There is nothing in the Amended Counterclaim that suggests the stop work order was a distinct, unequivocal, and absolute repudiation of any of BMO's duties under the contract. In short, Muskogee has not alleged that BMO failed to make any required disbursement under the contract.

Muskogee also attempts to state a cause of action by alleging that BMO breached a variety of implied covenants, most importantly, the covenant of good faith. BMO argues in its motion to dismiss

that Florida law does not provide an independent cause of action for the breach of the implied duty of good faith absent the breach of some specific term of the contract. Indeed, the Eleventh Circuit has noted that under Florida law, "[a] breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (citing *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. 1st DCA 1999)). Consequently, Muskogee fails to state a claim for breach of the covenant of good faith.

In another attempt to bolster its claims, Muskogee points to several oral and electronic statements demonstrating BMO's intent to continue to fund the project or extend the loan, even though it requested a work stoppage. BMO points out, and the Court agrees, that such agreements are barred by Florida's statute of frauds. Fla. Stat. 687.0304.[5]

Finally under Count I, Muskogee alleges that BMO failed to promptly provide notice of default as required by paragraph 7.4 of the Loan Agreement. (Doc. 32, ¶ 75). Specifically, it claims that notice should have been provided prior to the October 19, 2010 direction to stop work. Nowhere though, does Muskogee allege that such a default of the Loan Agreement actually occured. Therefore, Defendants have failed to allege a cause of action for breach of contract based on failure to provide notice of default.

[5] The Court also rejects a similar claim made by Muskogee in relation to the June 2010 loan extension.

For the forgoing reasons, Plaintiff's Motion to Dismiss is granted as to Count I of the Amended Counterclaim.[6]

### B. Count III - Negligence

In Count III, Muskogee concludes by inserting a claim for negligence. Specifically, it asserts that the stop work request negligently impaired the value of the collateral. BMO argues that this claim is barred by the economic loss rule. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004). In response Muskogee cites several cases, each involving a creditor that actually obtained the collateral of a debtor and liquidated it in an allegedly "commercially unreasonable way." *See, e.g., Tropical Jewelers, Inc. v. NationsBank, N.A.*, 781 So.2d 392 (Fla. 3d DCA 2000) (after default, the creditor obtained collateral and liquidated it); *Dorsey v. Maryland Nat'l Bank*, 334 So.2d 273 (Fla. 3d DCA 1976) (where a creditor seized control of a business and sold off inventory). Muskogee apparently equates a request by a creditor to "stop work" on a construction project with a seizure and disposition of secured collateral. The Court declines to make such a connection.

### V. Conclusion

In light of the foregoing, Plaintiff's Motion to Dismiss Count I and III of the Amended Counterclaim (Doc. 33) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 19, 2011.

---

[6] In its motion to dismiss BMO also challenges whether the individual Guarantors of the Loans have standing to file a claim based on the underlying contract. Since the Court finds that Defendants have failed to state a claim in regard to their breach of contract counterclaim, the Court need not reach that issue.

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE